IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRENCE M. GORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-1417-E-BN |
| | § | |
| TRANS UNION LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Terrence M. Gore filed a *pro se* lawsuit against Defendants Trans Union LLC and Higher Education Loan Authority of the State of Missouri ("MOHELA") in a Dallas County state court that included allegations under the Fair Credit Reporting Act ("FCRA"), a federal statute, and Defendants removed. *See* Dkt. No. 1.

United States District Judge Ada Brown referred the removed case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

After MOHELA answered Gore's amended complaint (filed as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B)), *see* Dkt. Nos. 18 & 23, it moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), *see* Dkt. Nos. 24 & 25. Gore responded and moved for leave to amend. *See* Dkt. Nos. 31, 32, 34, 35, 37. Trans Union and MOHELA responded to the motion for leave to amend, and Gore replied. *See* Dkt. Nos. 39-47.

Trans Union also moved for judgment on the pleadings (after answering the amended complaint) and for sanctions. *See* Dkt. Nos. 30, 53-56, & 58-60. Gore responded to Trans Union's Rule 12(c) motion. *See* Dkt. No. 63. Trans Union replied. *See* Dkt. No. 64. And the Court struck and unfiled Gore's unauthorized surreply. *See* Dkt. Nos. 65 & 66.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should grant the motions for judgment on the pleadings, deny leave to amend as futile, and enter judgment dismissing Gore's claims.

The Court will address the pending motion for sanctions through a separate order.

## Legal Standards

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 709 (5th Cir. 2023) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case

scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d

489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff' and would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."' *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules

provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And plaintiff may not amend his allegations through a response to a motion to

dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2).

Because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

One such reason is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

## Analysis

I.  **The Court should grant MOHELA's motion for judgment on the pleadings, deny as futile Gore's request for leave to amend his claims as to MOHELA, and dismiss the claims against MOHELA with prejudice.**

MOHELA moves for judgment on the pleadings and dismissal of Gore's claims

against it with prejudice chiefly because it is a furnisher of credit information – not a consumer reporting agency, nor a third-party debt collector, nor a debt collector as defined by the Fair Debt Collections Practice Act ("FDCPA") – so many of Gore's claims cannot apply to MOHEVA as a matter of law. And, as to Gore's claims that could apply to it, those claims – even amended as Gore proposes – still fail as not plausibly pled.

In sum, Gore alleges that MOHELA, as a student loan servicer, inaccurately reported information on his credit, and, against MOHELA, he has pled or has proposed amended claims under Sections 20.04, 20.06, and 20.07 of the Texas Business and Commerce Code ("TBCC"); under Sections 392.202 and 392.304 of the Texas Finance Code; under the FCRA; under the FDCPA; and for defamation per se.

Starting with the TBCC, Section 20.04 of that statute concerns charges for certain disclosures or services by consumer reporting agencies. *See* TEX. BUS. & COM. CODE § 20.04.

While Section 20.06 "establishes procedures that consumer reporting agencies must follow in responding to consumer complaints." *Shaunfield v. Experian Info. Solutions, Inc.*, 991 F. Supp. 2d 786, 803 (N.D. Tex. 2014) (quoting *Ewbank v. ChoicePoint Inc.*, 551 F. Supp. 2d 563, 568 (N.D. Tex. 2008)).

Specifically, "[i]f the consumer disputes 'the completeness or accuracy of information contained in [his] file' with a consumer reporting agency, the agency must 'reinvestigate the disputed information free of charge and record the current status of the disputed information not later than the 30th business day after the date

on which the agency receives the notice.'" *Id.* (quoting TEX. BUS. & COM. CODE ANN. § 20.06(a); citing *Gore v. Experian Info. Solutions, Inc.*, No. 3:03-cv-2949-H, 2004 WL 1969759, at *3 (N.D. Tex. Sept. 7, 2004), *aff'd*, 132 F. App'x 561 (5th Cir. 2005)).

And, "[i]f a credit reporting agency produces a report with inaccurate information, the agency must give a person providing consumer credit information the option of submitting a correction of the inaccurate information," while "[a] consumer reporting agency who receives such a correction must also have reasonable procedures in place to assure that previously reported inaccurate information is promptly corrected." *Walters v. Certegy Check Servs., Inc.*, No. A-17-cv-1100-ss, 2018 WL 4762141, at *4 (W.D. Tex. Oct. 2, 2018) (citing TEX. BUS. & COM. CODE § 20.07(a), (b).

Accordingly, the starting point for Gore's allegations that MOHELA violated the TBCC is its definition of consumer reporting agency:

> a person that regularly engages wholly or partly in the practice of assembling or evaluating consumer credit information or other information on consumers to furnish consumer reports to third parties for monetary fees, for dues, or on a cooperative nonprofit basis [but not] a business entity that provides only check verification or check guarantee services.

TEX. BUS. & COM. CODE § 20.01(5).

Gore fails to set forth facts to plausibly allege that MOHELA is a consumer reporting agency under the statute. So the TBCC claims fail as a matter of law.

And, "[b]ecause nothing in the proposed amended complaint suggests [MOHELA] can be sued under Chapter 20 of the Texas Business and Commerce Code, it appears plaintiff has stated a frivolous claim against [this] defendant," so Gore's

claims against MOHELA "under Chapter 20 of the Texas Business and Commerce Code should be dismissed" with prejudice. *Loyola De Rios v. First Premier Bank*, No. SA-1-CA-744-FB, 2011 WL 13324079, at *6 (W.D. Tex. Sep. 24, 2011), *rec. accepted*, 2011 WL 13324111 (W.D. Tex. Oct. 31, 2011).

Gore's claims and proposed amended claims under the FDCPA and Chapter 392 of the Texas Finance Code, also known as the Texas Debt Collections Act ("TDCA"), are similarly defective.

"The FDCPA was enacted in part 'to eliminate abusive debt collection practices by collectors.'" *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 581 (5th Cir. 2020) (quoting 15 U.S.C. § 1692(e)).

"Like the FDCPA, the TDCA governs collections of 'consumer debts' by 'debt collectors.'" *Cortez v. LRG & Assocs., LLC*, No. 3:18-cv-3135-L, 2020 WL 10817781, at *6 (N.D. Tex. Mar. 3, 2020) (quoting TEX. FIN. CODE ANN. § 392.001).

And "[t]he FDCPA and the TDCA are similar in that the 'same actions that are unlawful under the FDCPA are also unlawful under the TDCA.'" (quoting *Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 664-67 (N.D. Tex. 2010)).

> For purposes of the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." [15 U.S.C.] § 1692a(6). There are two categories of debt collectors: those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008). "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Brown v.*

*Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (per curiam).

*Bent v. Mackie Wolfe Zientz & Mann, P.C.*, No. 3:13-cv-2038-D, 2013 WL 4551614, at *3 (N.D. Tex. Aug. 28, 2013); *see also* TEX. FIN. CODE § 391.001(6) (defining "Debt collector" as "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts"); TEX. FIN. CODE § 391.001(7) (defining "Third-party debt collector" – applicable to MOHELA – as "a debt collector, as defined by 15 U.S.C. Section 1692a(6)").

Taking first Gore's FDCPA claims, he has not alleged that a student loan of his was in default at the time that MOHELA started servicing his loans. So he has not alleged that MOHELA is a debt collector as defined by the FDCPA. *See Brumberger v. Sallie Mae Serv'g Corp.*, 84 F. App'x 458, 459 (2004) (per curiam) ("Under the FDCPA, a debt collector does not include 'any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person.' 15 U.S.C. § 1692(a)(6)(F). By its plain terms the FDCPA does not apply to Sallie Mae because Brumberger does not allege that he was in default at the time Sallie Mae began servicing his loans. Thus, Brumberger fails to show in his complaint that he is entitled to relief under the FDCPA, and the district court correctly dismissed his claim under Fed. R. Civ. P. 12(b)(6). *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).").

Similarly, Gore fails to allege a plausible claim against MOHELA under Section 392.202. *See Jackson v. Wells Fargo Home Mortg.*, No. 3:18-cv-937-M-BH,

2019 WL 3606463, at *13 (N.D. Tex. July 17, 2019) ("In short, 'if a debt is in default at the time the assignee acquires his interest in the debt, he is a "third-party debt collector" within the contemplation of section 392.101(a) of the TDCPA.'" (cleaned up; quoting *Adams v. Bank of Am.*, No. 4:10-CV-709, 2011 WL 5080217, at *7 (E.D. Tex. Oct. 26, 2011)), *rec. accepted*, 2019 WL 3574258 (N.D. Tex. Aug. 6, 2019).

Nor has Gore alleged a plausible claim against MOHELA under Section 392.304 where the operative complaint and the proposed amended complaint fail to include specific facts as any allegedly fraudulent, deceptive, or misleading representations that MOHELA made to Gore. *See, e.g.*, *Olanipekun v. JPMorgan Chase Bank, N.A.*, No. 4:18-cv-978-O-BP, 2019 WL 3389194, at *7 (N.D. Tex. July 10, 2019) ("'To violate the TDCA using a misrepresentation, the debt collector must have made an affirmative statement that was false or misleading.' … Here, Plaintiff has not alleged any affirmative statement made by Chase that was false or misleading. Without any specific facts explaining who told him what and when, and why the statement was false or misleading, Plaintiff has failed to allege facts sufficient to withstand a motion to dismiss on this claim." (quoting *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015))), *rec. accepted*, 2019 WL 3387757 (N.D. Tex. July 26, 2019).

Next up, the FCRA claims. "Concerned by 'abuses in the credit reporting industry,' Congress enacted the FCRA to ensure fair and accurate credit reporting that protects consumers while meeting the needs of commerce." *Hammer v. Equifax Info. Sevs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020) (quoting *St. Paul Guardian Ins.*

*Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989); citing 15 U.S.C. § 1681(b)); *see also Donna v. Countrywide Mortg.*, No. 14-cv-03515-CBS, 2015 WL 9456325, at *5 (D. Colo. Dec. 28, 2015) ("The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." (quoting Section 1681(b))).

"The FCRA 'places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies.'" *Donna*, 2015 WL 9456325, at *5 (quoting *Aklagi v. Nationscredit Fin.*, 196 F. Supp. 1186, 1192 (D. Kan. 2002)).

As plausibly alleged – in the current complaint and the proposed amendment – MOHELA only falls in the last category. And this cuts off most of the claims asserted against MOHELA under the FCRA. *See Scott v. Amex/Centurion S&T*, Nos. 3:01-cv-1594-H, -1595-H, -1596-H, 1597-H, 1598-H, 1599-H, -1600-H, -1601-H, -1602-H, 2001 WL 1645362, at *4 (N.D. Tex. Dec. 18, 2001) ("For furnishers of information to be liable to plaintiff under the FCRA, the Court must find non-compliance with § 1681s-2. That section addresses the responsibilities of furnishers of information to consumer reporting agencies. There is no cause of action, however, for failures to comply with § 1681s-2(a), except for actions by the State on behalf of residents of the State, as provided in § 1681s(c)(1)(B)." (citation omitted)).

Under the FCRA, Gore primarily alleges violations of 15 U.S.C. § 1681i and

includes allegations that MOHELA violated 15 U.S.C. §§ 1681c, 1681e, 1681g, and 1681j. But Gore fails to plausibly allege that MOHELA violated these provisions where he has not alleged that MOHELA itself is a consumer reporting agency. *See Owens v. TransUnion, LLC*, No. 4:20-cv-665-SDJ-KPJ, 2021 WL 5088686, at *6 (E.D. Tex. Aug. 30, 2021) (as to claims under Sections 1681c, 1681e, and 1681i), *rec. adopted in applicable part*, 2021 WL 4451891 (E.D. Tex. Sept. 29, 2021); *Pinckney v. SLM Fin. Corp.*, 433 F. Supp. 2d 1316, 1321 (N.D. Ga. 2005) (Section "1681g … appl[ies] to consumer reporting agencies, not furnishers of information."); 15 U.S.C. § 1681j (pertaining to charges for certain disclosures by consumer reporting agencies).

Also under the FCRA, Gore alleges that MOHELA violated Section 1681s-2(b), a provision that does impose duties on furnishers: (1) to investigate and report results of investigations to consumer reporting agencies after a furnisher of information receives notice of a dispute and (2) to correct any inaccuracies.

Consequently,

> [t]he duties created by subsection (b) arise … only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information. *See* 15 U.S.C. § 1681s-2(b)(1) (1998). No cause of action against the furnisher of information accrues, therefore, until after the furnisher receives the requisite notice from a consumer reporting agency. That the consumer has notified the furnisher of information of a dispute does not suffice. *See Yelder v. Credit Bureau of Montgomery, L.L.C.*, 131 F. Supp. 2d 1275, 1289 (M.D. Ala. 2001).

*Scott*, 2001 WL 1645362, at *4 (footnote omitted); *see also Shaunfield*, 991 F. Supp. 2d at 805 ("Once a furnisher is notified by a consumer reporting agency that the consumer has disputed the completeness or accuracy of information pursuant to § 1681i(a)(2), the furnisher must conduct its own investigation with respect to the

disputed item, correct any inaccuracy, and notify the agency of the results of its investigation. 15 U.S.C.A. § 1681s-2(b). To recover against a furnisher for violations of § 1681s-2(b), a plaintiff must show that: (1) he disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation." (citations and footnote omitted)).

But "nothing in [Gore's complaint or proposed amended complaint] indicates that [MOHELA] received any notice from a credit reporting agency." *Scott*, 2001 WL 1645362, at *4.

"In the absence of an allegation that defendants failed to comply with § 1681s-2(b) after receiving notice from a credit reporting agency, the Court should dismiss the FCRA claims as frivolous. In the absence of notice to defendants from a credit reporting agency, the claims lack an arguable basis in law. The legal theory simply has no merit without some advance notice to defendants by a credit reporting agency. That element is lacking under the scenario presented by [Gore]." *Scott*, 2001 WL 1645362, at *4; *see also Green v. RBS Nat'l Bank*, No. 4:06-CV-0188-HLM, 2008 WL 11417395, at *9 & n.4 (N.D. Ga. Jan. 23, 2008) (collecting cases); *Donna*, 2015 WL 9456325, at *5.

Finally, insofar as Gore alleges against MOHELA a claim for defamation per se under state law, the FCRA preempts a defamation claim concerning credit reporting absent plausible assertions that the furnisher "acted with malice or reckless

disregard for truth." *Burress v. Chase Card*, No. 3:19-cv-1198-S-BT, 2020 WL 6947355, at *3-*4 (N.D. Tex. Oct. 21, 2020), *rec. accepted*, 2020 WL 6946611 (N.D. Tex. Nov. 24, 2020).

And, like here, where such allegations are not present, the Texas defamation claim should be dismissed. *See id.* at *4 ("Burress does not address whether Chase had the requisite knowledge of falsity or serious doubts as to truth, or that Chase intentionally acted to harm him. Accordingly, Burress is unable to state a claim for relief under Texas defamation law. The Court should dismiss this claim under Rule 12(b)(6).").

## II. The Court should grant Trans Union's motion for judgment on the pleadings, deny as futile Gore's request for leave to amend his claims as to Trans Union, and dismiss the claims against Trans Union without prejudice to being refiled if the state trial court's decision on which res judicata is based is reversed on appeal.

Trans Union moves for judgment on the pleadings on and dismissal of Gore's claims against it with prejudice because those claims are barred by res judicata.

As Trans Union explains,

[i]n *Gore v. Trans Union LLC*, Cause No. DC-22-15076 (Dallas County Dist. Ct., 95th Judicial Dist.), filed on October 5, 2022, Plaintiff sued Trans Union under the Texas credit reporting statute, Tex. Bus. & Com. Code § 20.01, et seq., arguing that Trans Union was publishing inaccurate information on his credit report and in his credit history starting in January 2022. In particular, Plaintiff argued that his credit report was inaccurate because Trans Union was reporting a bankruptcy from 2015 that Plaintiff believed should have been removed because it was reporting for more than seven years. Plaintiff further alleged that inaccurate and derogatory information on his credit report and in his credit history is "having a harmful effect on [his] credit standing and has prevent [sic] Plaintiff from entering into financial transactions to benefit his business." Thus, Plaintiff contended that the inaccuracy on his credit report has caused him to suffer "injury in fact."

Trans Union filed a no-evidence Motion for Summary Judgment

> on the grounds that Plaintiff's credit report did not contain inaccuracies. The Court agreed and rendered a final take-nothing summary judgment against Plaintiff on July 5, 2023, and awarded Trans Union $37,184.70 in attorney' fees and costs as the prevailing party. Plaintiff is pursuing an appeal in the 5th District Court of Appeals in Dallas.

Dkt. No. 54 at 7-8 (cleaned up); *see also Gore v. Equifax Info. Servs.*, No. 05-23-00659-CV (Tex. App – Dallas), *available at* https://search.txcourts.gov/Case.aspx?cn=05-23-00659-CV&coa=coa05 (last visited Feb. 2, 2024).

Public documents from other judicial proceeding "are of a kind that must *always* be considered in disposition of a *res judicata* defense in a Rule 12(c) motion." *Van Duzer v. U.S. Bank Nat. Ass'n*, 582 F. App'x 279, 283-84 (5th Cir. 2014) (per curiam) (emphasis in original; citing *Funk v. Stryker Corp.*, 631 F.3d 777, 782-83 (5th Cir. 2011)). Trans Union provides those to the Court through an appendix to the Rule 12(c) motion. *See* Dkt. No. 55.

And, where a court's ruling on a Rule 12(c) motion turns on Rule 12(b)(6)'s legal standards, "dismissal under Rule 12(b)(6) is appropriate if the res judicata bar is apparent from the pleadings and judicially noticed facts." *Basic Capital*, 976 F.3d at 591 (cleaned up; quoting *Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019) (per curiam)).

> Texas law, not federal law, applies when a federal court determines the preclusive effect of a Texas judgment. *Basic Capital*, 976 F.3d at 591. And the Texas standard is articulated in a slightly different way, requiring: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Cox v. Nueces Cnty.*, 839 F.3d 418, 421 (5th Cir. 2016) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

*Matter of 3 Star Props., L.L.C.*, 6 F.4th 595, 604-05 (5th Cir. 2021) (cleaned up).

- 17 -

The second element is not reasonably contested. The parties are identical. And Trans Union has demonstrated that the other two elements have been met.

> First, the state court decision was final. To be "final" for purposes of claim preclusion, a judgment must be both comprehensive and definite. A judgment gets preclusive effect when it "settles all rights adjudicated between the parties so that the substantive rights vindicated in it are vested rights" but not "when outstanding issues remain in the action." Additionally, a final judgment must be the "the 'last word' of the rendering court." A judgment is res judicata once the trial court loses plenary power to amend or alter it.

*Tejas Motel, LLC v. City of Mesquite*, 63 F.4th 323, 329-30 (5th Cir. 2023) (footnotes omitted).

The trial court's judgment against Gore and awarding Trans Union fees and costs, although on appeal, has not been superseded and is therefore final – it "dispatched with all of [Gore's] claims by granting" Trans Union's motion for summary judgment. *Id.* at 330; *see also Gulf Ins. Co. v. Clarke*, 902 S.W.2d 156, 159-60 (Tex. App. – Houston [1st Dist.] 1995, writ denied) (concluding that "a judgment is final … if the judgment disposes of all issues and parties in the case, the trial court's power to alter the judgment has ended, and execution on the judgment, if appealed, has not been superseded" (discussing *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1 (Tex. 1986); *Street v. Hon. Second Ct. of Appeals*, 756 S.W.2d 299 (Tex. 1988))).

Despite his arguments that Texas's law is otherwise, the pendency of Gore's appeal does not alter the judgment's finality. "[A] Texas state court's 'judgment is final for the purposes of issue and claim preclusion despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo.'" *In re Owsley*, No. 2:20-cv-00171, 2021 WL 3033120, at *12 (S.D. Tex. July 17, 2021) (quoting *Scurlock*

*Oil*, 724 S.W.2d at 6; citations and footnote omitted); *see also id.* at \*12 n.12 ("Note that this principle articulated in *Scurlock Oil* represented an intentional change in Texas law at that time," to prevent the litigant aggrieved by a Texas trial court's judgment from appealing in Texas "and then, during the pendency of that appeal, [seeking] and obtain[ing] relief in [another forum] which for all practical purposes [would] nullif[y] the [prevailing litigant's] beneficial Texas ruling." (citations omitted)).

And, as Trans Union points out, the pending appeal in state court, of a no-evidence summary judgment, does not involve a trial de novo. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003) ("A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." (collecting cases)).

Nor is the finality of the judgment altered if it did not resolve any disputes between Gore and defendants other than Trans Union. *See Tejas Motel*, 63 F.4th at 331 ("[A]lthough the rights of 'all' parties often need to be resolved before a judgment is 'final' for appeal, a 'judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest.'" (footnotes omitted)).

That leaves the third element: the relationship between the claims. And, "[u]nder Texas law, the claims need not be the same so long as those brought in the second action are 'based on' those in the first or 'could have been raised' then." *3 Star Props.*, 6 F.4th at 605 (quoting *Cox*, 839 F.3d at 421).

> To determine what claims could have been raised in the first action,
> Texas follows a "transactional approach," under which "a final judgment
> on an action extinguishes the right to bring suit on the transaction, or
> series of connected transactions, out of which the action arose." *Barr v.*
> *Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631
> (Tex. 1992). This determination "requires an analysis of the factual
> matters that make up the gist of the complaint." *Id.* at 630. "Any cause
> of action which arises out of those same facts should, if practicable, be
> litigated in the same lawsuit." *Id.*

*Basic Capital*, 976 F.3d at 592; *cf. 3 Star Props.*, 6 F.4th at 607 ("Res judicata 'ensures

that a defendant is not twice vexed for the same acts' and 'achieves judicial economy

by precluding those who have had a fair trial from relitigating claims." (cleaned up;

quoting *Amstadt*, 919 S.W.2d at 653)).

The gist of Gore's complaint against Trans Union in this lawsuit is that it

reported inaccurate information on his credit report. And, in the operative complaint,

Gore references the state lawsuit that he filed in October 2022 and admits that he

elected to file a second lawsuit against Trans Union based on the same series of

connected transactions – rather than amend his claims in the first-filed suit –

referencing allegations that occurred in October 2022 and March 2023, prior to the

entry of judgment in the first case. *See* Dkt. No. 18 at 2-3.

So, applying Texas's transactional approach, Gore's own allegations

demonstrate that the claims here could have been filed in the first state court action.

The Court should therefore find that res judicata both bars Gore's claims

against Trans Union in this lawsuit and shows why leave to amend is currently futile.

*See Robinson v. U.S. Bank, N.A.*, No. 3:19-cv-101-G, 2019 WL 5869727, at *6 (N.D.

Tex. Nov. 8, 2019) ("As Robinson's claims in the instant action are barred by *res*

*judicata*, any amendment to her complaint would be futile." (citation omitted)).

But "[t]he pendency of the state court appeal … affect[s] how the Court disposes of [Gore's] claim[s]" against Trans Union. *Rice v. Bobyk*, Civ. A. No. 3-11-403, 2012 WL 5880697, at *4 (S.D. Tex. Nov. 21, 2012) (observing that, "[w]hile adopting the Restatement position that a judgment is given preclusive effect even when it is being appealed, the *Scurlock* court did counsel that a 'judgment in a second case based on the preclusive effects of a prior judgment should not stand if the first judgment is reversed'" (citation omitted)).

Accordingly, the Court should dismiss Gore's claims against Trans Union "without prejudice to being refiled in the event that the county court's decision is reversed on appeal." *Id.* (citation omitted).

## Recommendation

The Court should grant Defendants Trans Union LLC's and Higher Education Loan Authority of the State of Missouri's motions for judgment on the pleadings [Dkt. Nos. 24 & 53], deny Plaintiff Terrence M. Gore's request for leave to amend [Dkt. Nos. 31, 34, & 35] as futile, and enter judgment dismissing the claims against MOHELA with prejudice and the claims against Trans Union without prejudice to being refiled if the state trial court's decision on which res judicata is based is reversed on appeal.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 2, 2024

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE